Good morning, Your Honors. May it please the Court and Counsel, I'd like to reserve five minutes for public comment. Help us keep track of your time. I'm going to be directing my arguments primarily to the Tax Injunction Act this morning, because I believe the issues of the Eleventh Amendment and abstention have been adequately briefed. My own sense is that if we win on the Tax Injunction Act, we should win on the other two. Now, if the Court disagrees, I would certainly take questions, but I'm going to be directing my arguments primarily to the Tax Injunction Act. The Court requested supplemental briefings after the brief filed on the recent Wynn case that went to the United States Supreme Court. Those briefs have been submitted. In this case, what we're dealing with here is a compact called IFTA. It's a federal compact authorized by 49 U.S.C. Section 31701. Can I clarify instead of going through it all? To me, the key question, although I don't know if it's just positive, is does arguing get no money ultimately out of this? Yes. Well, let me pursue that a little bit. Let's just look at Oregon and Nebraska just as an example. Oregon collects, in the common parlance, Nebraska taxes, which it remits to Nebraska. Correct. The Tax Injunction Act forbids a court from restraining, among other things, the collection of taxes, but it doesn't say whose. And it seems to me that what you're seeking to do is to have the court restrain Oregon's collection of taxes for Nebraska and Idaho and New York and whoever else. Why doesn't that just fit right? In other words, a state as a collection agent for another state, why isn't that good enough if the ultimate thing that's being collected is taxes? The state tax. That's a very good question. There's two issues here that we have raised and briefed extensively on this, and I would like to address both of them. But before I address that question, I want you to understand that the fallback position or the argument we're really saying is that there is no, quote, plain, speedy, or efficient remedy, whether or not we are directing our action to state taxes. And, Your Honor, with all due respect, we're not seeking to restrain anything. We're seeking a declaration. There are a lot of cases that say that doesn't help you. So let's leave that aside. Let's assume, I know you don't give up that argument, but let's assume that the remedy that you're seeking would count as restraint under the Tax Injunction Act. Why isn't it enough to have Oregon collect taxes for another state? It may be, Your Honor. Okay. It may be. I mean, that isn't such arguable. Here's what I'm trying to say. If you read the act, though, it says, the district court shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state capital estate law, where a plain, speedy, efficient remedy may be had in the course of such state. Okay. Now, if you interpret that literally, and looking at the Wynn case, and I thought about this, of course, as usual, about 2 o'clock yesterday and last night in the morning, looking at the Wynn case, the Wynn case says that there is no absolute, as I indicated in the brief, the Supreme Court said there's no absolute prohibition on challenging state tax systems. It's not absolute. Admittedly, in the Wynn case, what we were talking about was a tax credit in Arizona. Well, yes, because the ultimate result, if they won, was more money for the state and not less, and if you win, the ultimate result is less money for the states whose taxes are involved. For other states. But the phrasing of the statute, which I looked at about 2 in the morning, not really. Pardon me. The phrasing of the statute, it seems to me, does present problems for you because it says under state law, as you say, but it doesn't say which state. It doesn't say which state. And then it says where a plain, speedy, and efficient remedy may be had in the courts of such states. So to take Judge Scraper's hypothetical, we are one way to look at what you're doing is enjoining, suspending, or restraining, and I understand the remedy question, and I share your concern, but that's where we are with regard to refunds, that under state law, Nebraska law, in other words, the tax is under Nebraska law, right? And so the question is, is there a plain, speedy, and efficient remedy, which may be had in the courts of such states, i.e., Nebraska? And that is what the compact does, right? It sends you to Nebraska. That's what the ALJ said, and let's make sure we're clear on it. You're getting into the second argument. No, no, no. Ed, no, I want you to answer Judge Berzon's question because I have the same one. As to the Nebraska tax, if your underlying legal argument were correct, which for the sake of this discussion we assume, could you go to Nebraska and seek a refund? We could go to Nebraska, Idaho, all 47 states. Okay. So there's a plain, speedy, and efficient remedy in Nebraska for a Nebraska tax. If all you were looking at was one tax, I would agree with you. But we're looking at 47 taxes. Which, for your convenience, have been consolidated in Oregon. For their convenience. And for your convenience, too. I mean, one wonders why Oregon is doing this at all. Why is Oregon participating in this? One wonders. I don't know. Well, perhaps Mr. Adams will answer that. I've wondered also why Oregon gets out of belonging other than the federal law sort of tells them they ought to. Right. If they were to change the tax system, they would have to. I can tell you that the Oregon website says the reason they do this is because their tracking companies want them to. But I don't know whether that's true or not. It could be. It could be. But let me get back because I do want to answer your question. But you're getting into the second argument. And the question in my mind is I don't believe that that argument is based on the language of the statute with respect to the word state. Why? Because it says plain, speedy, and effective and efficient remedy. Here we have a federal compact. It is actually federal law, of course. Also, it becomes state law when adopted by each state. It is one act providing for the collection at one source of all taxes. So if you're in a federal compact, the only possible remedy would be to go to Nebraska for Nebraska taxes. So you're no worse off. I mean, the only question is whether by passing this law, Congress somehow intended to undo the Tax Injunction Act. I don't believe so. But Congress clearly intended that there be an efficient administration of the tax law. But the agreement specifically says that you then have to go to all the 50 states to get the refunds, right? The ALJs. But is that in the agreement? The agreement says that with respect to tax-exempt fuel. And we contend this is not tax-exempt fuel. But at least Congress contemplated, I think Judge Berzon's point is, that Congress contemplated that at least in some circumstances there wasn't going to be any shortcut to going to each state. No, Congress didn't say anything about that in 31701 etc. It didn't say that. That's the agreement. The agreement says that. There's nothing in the statute that says that we are required to go to each and every state. It just simply says that the states are authorized to enter into this compact. I thought it did make reference to the Tax Injunction Act, though. The statute, Your Honor? Maybe it's the agreement. And I completely missed it, Your Honor, if that's the case. It may be the agreement. I'm sorry. Go ahead. And I don't remember the agreement saying it either, but I could be wrong about that. If I can get back to the point, the first argument that we make is that, in fact, the statute should be read to indicate that all the cases, by the way, all the cases that have been cited by both sides, in fact, that I think exist, generally speaking we're not generally speaking, specifically. They all involve an action by a taxpayer directed to the state in which the district court sits, by the way, to enjoin taxes to that state. Because that's what the cases were about. That's what the cases were about. In this case, that's something else, this case. This is a case of personal impression in that respect. There's never been a case that I've seen where you are directing your action to a state that has no interest, no taxes at all, but is simply acting as a collector for other states. What about the U.S. Steel case, which is probably your strongest case, but it still was a parallel case. It didn't have the feature that Oregon was not. I'm sorry. You're absolutely right. Excuse me. But in that case, of course, in the district court, they essentially held, for the reasons that we've indicated, that there was no plane speeding in that room. Thank you very much. I have it written down. So other than that case, this is the first case. And I concede that such an interpretation as Judge Braver has given is arguably, is arguable. I take the other side, based particularly on the recent Wynn case. Now, counsel, I did want to point out that it is 49 U.S. Code section 31706C, which it is Congress that makes reference to the Tax Injunction Act. I say subject to section 1341 of Title 28, the court shall issue certain injunctions and TROs, and that reference is to the Tax Injunction Act. So Congress at least had in mind the continued vitality of the Tax Injunction Act. It did. I don't recall reading that, but I accept what you're saying. It certainly would be the case. But, again, even the Tax Injunction Act would say it has to be a plane speeding and a fishing run. It seems to summarize that you probably are in better shape in your secondary than in your first.  What, at a minimum, then, in order to, even if we assume that the rasking or hypothetical is the focus, has anybody, have you ever argued or has anybody in this case ever determined whether the 50 states to which you would have to go has plane speeding and fishing remnants? The last one is why you're not involved. But that was not an issue that was raised below or discussed at any length other than. Meaning you did not raise it. Meaning you did not raise it. Right. You're not contesting that, at least as to their own taxes, if you are a taxpayer in Nebraska trying to get money back from Nebraska or any other of the covered states that they have plane speeding and fishing remnants. Individually. The only thing that I would say is this, that insofar as they take the same position, and they seem to take the same position because they've all adopted IFTA, but only tax-exempt fuel is the subject of a refund, then there is no procedure under IFTA. We're taking the position that we're taking, which is that there's no taxable effect. Well, but that says that by the merits you can control whether the tax injunction, I mean, you're sort of saying, well, we're going to lose on the merits, and therefore we don't have a remedy. But that isn't the focus of the statute, is it? Isn't it a procedural question, not a merits question? If you have a potential remedy, but you have a loser of an argument, that doesn't mean you don't have a remedy, does it? But here's the question. Answer that question. I disagree, and if I can explain that. I don't think you have a remedy. If the remedy is limited to what they define as tax-exempt fuel. That doesn't answer my question. I'm asking a more theoretical question. If there is a procedure in place for a taxpayer in a state to ask for a remedy such as a refund, but the argument the taxpayer seeks to make is going to lose on the merits, does that mean it's not an adequate remedy under the Tax Injunction Act? No, it does not. Okay. What's different here? Remember, IFTA is not only a federal contract, but it's adopted by the states and becomes state law. So under IFTA, you have to apply to whatever state in accordance with the terms of IFTA. And IFTA says that you apply for tax-exempt fuel refunds to the courts of those states. This is not tax-exempt fuel. As far as I know, there is nothing besides IFTA on the question that we're talking about, which is, So your argument is starting to come through now. Sorry. What's starting to come through now is that your argument is that the merits and the plain speedy remedy question are essentially bound up together, because you would say that you cannot go to the states to make this argument, or they can't, or that IFTA doesn't require you to. IFTA doesn't even provide for going to the states to argue that fuel not used for propulsion is not taxable. There's no provision for that. And, in fact, the ALJ and, of course, ODOT's position before the ALJ and the ALJ agreed was you simply can't do it. In other words, there is no way, there is no procedure in Oregon or elsewhere for making the claim that it's not a taxable event when you're idling off the highway. There is no procedure in IFTA. Judge Graber, I have not gone and done a survey. Was that their argument? Their argument is that this is a species of tax exemption, so there is a remedy. I remember the ALJ saying something, and I couldn't even understand what you were saying. I have a little bit of a hard problem understanding what you're saying, too, about why this is different than a tax exemption. Because the statute, the agreement, I should say, the agreement provides that fuel shall be taxed if it's used for propulsion. And if it's used for idling, it's not used for propulsion. Then the statute goes on to say that if it's a tax exemption under a state for a particular kind of fuel, whether it's placed in the supply tank or not, then you go to the state and ask for the refund directly. And their argument has been that we must be asking for an exemption. We're not. We have done a survey. We did, I think, mention, I can't remember if we did in this briefing or not, but we did mention that the tax exemptions in states, for example, for fuel used and for refrigeration or something, that has nothing to do with this. Are there any jurisdictions that have decided on the merits, the question of whether fuel used for idling counts as fuel used for propulsion or not? Role, I think we cited these cases. Role is the one case where that was addressed, and I think highway dispatch may have indirectly addressed it. Okay. Based on state statutes where the evidence had not been sufficiently specific in role. So some states have found it possible to reach the merits of this claim. How have they done so if there's no procedure for doing so, which seems to be your other argument? Because I believe what happened in role, at least, was it was an appeal from a decision of the ALJ. That would be the only procedure I'm aware of. In other words, that you go through the base jurisdiction in role. The base jurisdiction was Wisconsin. And you appeal from the ALJ's decision, as we're doing here in Oregon, in the Oregon Appellate Courts. But we're not subject to the ALJ's jurisdiction in any of these states. That's the point. So is the problem. Because we can't. Now, again, I'm starting to understand more about this. It's the problem that because Oregon does not have its own tax of this kind, it does therefore in the other states. Were the other states deciding under their state law or under the law of other states? Were they deciding under EFTA or under their own law? They should have been deciding under EFTA, but they decided under state statute. They applied their own state statute. But were those instances in which the complaint was about money collected by the state or was it a refund action under the provision that if you want a refund, you have to go to the state which is imposing the tax? No. As I understand it, the lease-to-enroll, and I think in the other case, too, it was response to an assessment where the trucking company had not paid on idling fuel. And so the ALJ then made a decision. But why were they then applying state law? Would it be applying the law of whatever state the assessment was representing, which wouldn't necessarily be their own state? That was one of the points that I made in the brief, that they did apply state statutes, which was contrary to EFTA. Now, EFTA should prevail. But they went ahead and said, well, under our state statutes, we don't think this is. . . But doesn't that suggest that there's another kind of. . . Well, never mind. It suggests to me that there is an ordinary remedy other than an injunctive remedy. But here's what I wanted to ask you. In Wisconsin, that was the base jurisdiction for roll. All right? So roll withheld taxes. And they commenced an administrative proceeding. And when they lost, they appealed. In the state court system. In the state court system. And you could have done that. We're not subject. . . No, Wisconsin, Nebraska, none of those states are going to bring any kind of proceeding against us. It's Oregon that has jurisdiction over us. Right. So if you sue in Oregon state courts and you don't have a tax injunction act, that precludes district courts from doing something. Well, we definitely are appealing the decision of the ALJ in Oregon. But the question is, will that decision be binding on any other state? Absolutely not. Why not? It bides full faith and credit. The full faith and credit clause, Your Honor, as I understand it, would not apply to a decision that's based on, particularly if other states say they're going to give their own interpretation and their own statutes. So if you want to. . . If they do what they've done before. . . Let's say you win in Oregon on appeal. And you get a judgment that says no tax for anything happening while your trucks are idling. And you carry that around to the other 46, 47, 46, I guess, other states, however many there are. Yeah, there would be 47 other ones. The lower 48, that's why they call it that. Don't you think you'd get a refund if you had an Oregon court ruling in your favor? I don't know that, Your Honor, but I can tell you based on the cases that we've seen that keep saying, well, we're not going to follow WICCA, we're going to follow our own state statutes, which I think is wrong. My understanding of your argument is that you began by saying, noting that the Tax Adjunction Act refers to such a state. And my response to that, which seems right to me, is that, yes, the state for which the tax is being collected. But then if one is consistent about that, then the issue isn't whether Oregon has a plain speeding and efficient remedy, it's whether the state for which the tax is being collected has a plain speeding and efficient remedy. But all our remedies have to go through Oregon, Judge. That's our administrative system. I'm actually trying to help you. I know. Maybe I'm missing something. Now I'm trying to understand whether instead of looking at whether you could have gone through the administrative system in Oregon, we don't have to look to see what you could have done in any of these other states who are actually getting your taxes. And there is no procedure for making this kind of claim. It's only for seeking a refund for taxes on fuel. They are not our administrator. We can't raise this issue. Have you compiled one of these cases to see what happens? No, ma'am, I haven't. Okay. We have used a lot of your time with questions, and we will restore two minutes for rebuttal. Thank you. I'm sorry if I didn't respond directly. That's okay. It's a complicated issue. Mr. Adams. May I please report, counsel, to the extent the argument today has concerned the merits of the claim for a refund for fuel consumed while idling, I guess my preliminary observation would be this is why we asked, we moved to dismiss the case in federal court, and why the district court dismissed it, because this case and these issues about how IFTA should apply really are questions that can and will be resolved in the state court action. And the other preliminary thing I would like to say, although counsel says he wants to focus on the Tax Injunction Act and he's briefed the other two, I think that if this hasn't been said, let me say it, that this court could sustain the dismissal on any one of those three grounds. How does the Eleventh Amendment help you much if the complaint can be amended to name an individual? My answer to that would be that, as I understand it, naming an individual for prospective relief will get you out from under Eleventh Amendment immunity, and this case is about retrospective relief, in other words, a refund for past tax years. And so I don't believe that even although Judge Fagerty But the money is not Oregon money. Is that correct? Is there any Oregon money involved in this? That's correct, but that does not actually go to whether the relief is retrospective or prospective. Well, but there is a strain of Eleventh Amendment ex parte young cases that looks to whether or not the FISC of the state is involved, and the answer here is no. Well, the FISC is involved in like any other This is a sovereign immunity claim. I mean, unlike the conversation we were having before about the Tax Injunction Act, which may be equally concerned with all the states, whether Oregon can claim a sovereign immunity problem when there's no money involved, if it's its own money, may be a quite different question. Well, money comes in, money goes out, and that is expensive. That costs the state money out of its budget to Why does Oregon do this and spend money on it? That's a great question. I don't actually know why, but I think a better question actually would be why Oregon adheres to its very complicated weight-mile system, which is the only state in the union to do so, and I think counsel was correct is that, you know, for whatever reason, Oregon has entered into this agreement and made it a part of state law, because at some point, if Oregon does abandon its weight-tax system, it would probably go to this sort of prorating of fuel taxes. And by the way, every year or every session in Oregon, and including in initiative measures, we see very complicated revisions and proposals for revising the weight-mile system. But for present purposes, the point is that Oregon, for whatever reason, has chosen to spend some of its own money on this and get nothing back, and therefore I don't see how we would be concerned about the fact that it's getting nothing back. It's a choice it's made. So for 11th Amendment purposes, it seems to me that the zero sum of this may matter. To go back to the tax injunction issue, however, it may matter less. And what I'd like to address is what I finally understood to be the sort of sophisticated version of your opponent's argument, which does seem somewhat to wrap in the merits on the ground that, which isn't necessarily a problem if the two of them collapse into one logically. And it seems to be an argument that says you can't look at whether Oregon has a remedy, because Oregon isn't, quote, such a state. If we look at whether the other states have a remedy, he says, and this is what I need to evaluate, I don't know. He says the other states don't have a remedy because IFTA provides for a remedy for a tax exemption, but this isn't one. And that's a distinction that is too subtle for me. And, in fact, we said that in our supplemental brief, actually. Because IFTA itself, and it's a provision that we briefed to some extent in this case, and also we briefed it in the state case, says basically in R8-3200, this is at Act 10 of the opening brief, licensees, which is what made trucking is, must submit claims for refund for tax paid on tax-exempt fuel directly to the respective jurisdiction. They claim it's not a taxable event. They say it's not tax-exempt fuel. Well, but I guess, you know, I think this is perhaps the most important. It's either taxable or tax-exempt. Right? There are only two. Yeah. You either tax it or you don't. And whether you label it tax-exempt or non-taxable seems to me beside the point, because IFTA. Your position is there are only two things. It's either taxable, in which case you couldn't ask for a refund because you agree it's taxable, or it's tax-exempt, in which case you can ask for a refund. But what makes it tax-exempt and what makes it taxable? This is the key point. It's a merits question. Well, but it's key to this, the Tax Injunction Act. It is the law of the state that assesses and levies or imposes the fuel tax. Oregon does not assess or levy. So that whether it's taxable or whether it's tax-exempt is a question of Nebraska law, to use your example. And so what we presented to you in our supplemental brief, because we anticipated that this would come up, because it's actually, I think, their strongest argument, the actual wording of the Tax Injunction Act, the such state, we presented you with two scenarios. If May Trucking is correct that they get to come to Oregon, scenario number one, and get a refund, then they have, we contend, in Oregon, a plain, speedy, and efficient remedy in Oregon because they are getting a remedy in the courts of the state that is collecting. And bear in mind that, and this is on page 8 of our supplemental memo, this is Section 1341 of the Tax Injunction Act, it refers to district courts not enjoining, suspending, or restraining the assessment levy or collection. So it's in the disjunctive, and so therefore, if Oregon collects and there's a remedy in Oregon, if May Trucking is correct that they get to have a refund in Oregon, then the Tax Injunction Act covers that scenario. If we are correct on the merits and the interpretation of IFTA that it requires you to go to Nebraska because whether it's taxable or tax-exempt is a question of Nebraska law, then the remedy is in such state that is assessing or levying the taxes. So under either scenario, the actual wording applies. But if you do it the first way, the interesting thing is the collection of any tax, and you talk about Oregon, then you might arguably run into Hibbs because Oregon has no fiscal interest in it. In other words, if we're dealing with a refund here, I understand refunds in general are covered, but here you're asking for money from Oregon which is not, for money which is not going to come from Oregon. And to the degree that Hibbs suggests that the Tax Injunction Act is ultimately about the fisc of the state, it isn't, right? Well, it is. If the money comes in, the money goes out. It takes money to administer. It does affect the fisc of the state. Well, if they administer it, it's the other direction. I mean, again, if Oregon chose to spend that money, that's their problem, but they're not going to get more or less money. No, but they're not going to get more money. They're not going to get less either. As in Hibbs. But they're not going to get less either. It's going to be zero. Right now is the money that the appellate wants a refund on. Is that in a bank account under the state of Oregon's name? I do not know the answer to that question. I know that Oregon assessed in its role as collector, basically filed something that might be called assessment and said, pay this. I don't actually know. The state that was paid, what happens to it? Like, doesn't it have to be deposited in some type of financial institution for the state of Oregon, and then ultimately it would be transmitted to other states? But it's got to come to rest first in Oregon. I mean, they can't carry a bunch of cash. Or checks and tear them up into 47 pieces. No, I'm sure there's a fund, and it's in some institution somewhere in Oregon. So if there is a fund, whether there's been a disbursement from it or not, at some point there's a fund into which all these funds are put, the collected taxes. And if the appellant gets a remedy, probably the appellant can get a remedy against the state of Oregon, which had possession of those funds, whether they're still there or whether they've been dispersed. So it strikes me that it's not hard for you to argue it has an effect on the fiscal of the state. It doesn't really matter if someone else is standing behind the state. It's like a kick in the state's shin. State has to respond to it. Well, you're quickly plumbing the depths of my ignorance about how the system actually works. But I guess if the Oregon Department of Transportation doesn't know how the system works, it's going to be difficult for us to understand. Well, I'm sure the Oregon Department of Transportation knows better than I do. I just said today as I stand before you, I don't know some of the details about how the funds, but I do believe that this is affecting the fiscal in the sense that money is coming in. So you don't know, for example, whether the money from the 1998 and 1999 years that are still being litigated about is sitting in an Oregon bank account or has already been dispersed to the state? I do not know the answer to that. I apologize. Well, if in the state, let's say that the state proceeding is successful on behalf of Mr. Cary's client and there's a judgment of a state court ultimately that says, pay them back, wouldn't Oregon be responsible if we're having wrongly dispersed that money to pay it back and then go scrambling around to try to get it from the various other states? Certainly, Oregon would be bound, it would seem, by an Oregon determination. But, you know, here's the thing the ALJ did point out in the order that by signing on to IFTA, Oregon did not agree to collect, and every state that is a base jurisdiction agrees to collect, Oregon did not agree to administer the tax laws of other jurisdictions. And I found that actually very persuasive. It's in the ALJ order that's in the excerpt of the record in the opening brief. I found it very persuasive that that's kind of the tradeoff, that IFTA is really a limited compact and that Oregon did not agree to have to, and nor do the other states like Nebraska, want Oregon to be deciding whether Nebraska's fuel tax while I-link doesn't cover it. Which takes you back to saying that they have to go to each state. And whether that's efficient or speedy, when you think of the fact that Oregon is not administering the tax laws of each and every other jurisdiction, nor do the other jurisdictions necessarily want Oregon to be arbitrating their tax laws and their tax exemptions, it may actually be more efficient or speedy for Maytruck to go through those. This is just such an amazingly complicated thing. I assume all the different states have different tax rates, right? Not that they have the same rates. And there could be disputes about what the rate of the fuel tax is. That sounds like a reasonable assumption. Okay. So suppose somebody comes into Oregon and says, I've been assessed X amount per gallon in New York, but I really should have been assessed Y. Then where does that complaint go? Does Oregon decide that or do they say go bother New York? That's not about exemption, right? That's a rate issue. Where does it go? We don't know. I don't know, number one. And number two, I think Oregon has to accept at face value the rates set by a state and apply whatever rate it is given from the other jurisdictions. But either way, it's not a federal question. I think that's the point you're making. It's either Oregon or it's New York, but it's not a federal court. I think IFTA is a limited compact, which for ease of avoiding ripping up a check, as Judge Gould mentioned, into 47 pieces allows a base jurisdiction to collect and disperse pro rata according to what the state's rates are. But it doesn't get to make the decisions about the rates. It doesn't get to make the decision about what's tax exempt or what's taxable. But there's something when it says it's the taxes. You're now having an administrative procedure about the audit. It doesn't actually, in the sense of the Tax Injunction Act, we would say it doesn't really assess or levy. It's in the sense of impose them. It collects them, and it may be, as a nomenclature thing, it may be that there's a piece of paper that is an assessment that Oregon sends out, but it's an assessment really on behalf of the respective jurisdictions. So your position is essentially that the taxpayer, for the purpose of the Tax Injunction Act, is in the same position with or without a compact. There's still no federal claim. If you're trying to restrain a tax, it doesn't matter whether there's a compact or no compact. You don't come to federal court. That's essentially correct. That's correct. And to find otherwise, we would have to find somehow that IFTA intends to somehow lessen the effect of the Tax Injunction Act. Which would be hard to find when the implementing authorizing congressional legislation refers to incorporates by reference subject to the Tax Injunction Act. It appears that Congress intended to continue the Tax Injunction Act rather than to aggregate it. Unless I've heard any questions on anything else, I just would add, although we have not discussed younger abstentions, and I realize that the circuit in an NBANC decision has spoken about younger abstention recently in the Gilberton case, of which nobody has cited, but I just wanted to add that there has been some question in this case about what Oregon's state interest is. And we would say, and some of the similar things I've been saying, that its interest, it does have an obligation, for whatever reason it entered into the compact. For whatever reason. It is very hard to figure out what its interest is. But once having done so, it has an obligation to the other jurisdictions, and its interest is in not increasing its administrative burden and yet meeting its obligations under HFDA that it has agreed to participate in. And that is its interest. Isn't its position going to increase its administrative burden? In other words, it's saying that each of these things has to go through individual Oregon ALJ enforcement decisions. So it's certainly not lessening its administrative burden. I do have a very hard time seeing what the Oregon interest is, and I think the younger argument is a hard one for that reason. But by sending Maytrucking to the respective jurisdictions, then it's out of Oregon. That's one of Oregon's interests in this case, is to not have to administer the tax laws of 47 other jurisdictions, including this request, which every other appellate court, as the ALJ pointed out, has rejected the claim. But your argument is that it ought to go forward in a state proceeding. For younger purposes. That's why the younger argument is much weaker than the anti-intentional. We believe we will win in the state proceeding. I know, but your younger argument hinges on there being a state proceeding. So to say that there's a state interest in not having a state proceeding is not a very strong argument, because you want to stay in the state proceeding. That's what you want to do. Well, we want to affirm dismissal of this case. We're saying that the federal courts should not become involved because they're, for extension purposes, Oregon has an interest in resolving this in the way that Oregon interprets its own law, which is IFTA, and that's Oregon's interest. You probably hope that in the state proceeding, you ultimately get a ruling that says Oregon's just collecting this. If you want a refund, go to the other states. Leave Oregon alone. Well, that's the ruling we're seeking. That's what you want. That's our interest in the Oregon case. Our interest in this case is in having you affirm the dismissal of the district court on any one of those three grounds. But am I correct that we wouldn't reach, if we conclude, I'm not sure to certainty how the Tax Injunction Act works here with this novel situation that we've got, but if we conclude that the Tax Injunction Act applies, then do we reach that issue ahead of Younger so that we don't have jurisdiction and we never have to address Younger, or is Younger on kind of equal footing jurisdictionally so that we should address that first? Which issue do we address first? I think you should address the issue first that you believe the strongest that would support dismissal and then go with that. Potentially. I don't know which would take precedence between the Tax Injunction Act and Younger. This is a refund action. Wouldn't the result be not to dismiss the case if we were to do Younger and, therefore, isn't the Tax Injunction Act a logical prior? It's a good question. It's not actually an action for damages, though. It's an equitable request. But still, Younger abstention assumes that in some way, at some future time, the federal court could have jurisdiction. So wouldn't the subject matter jurisdiction, the Tax Injunction Act, logically be the first one? If federal courts can't be in this business whatsoever, isn't that logically the first issue? Yes. And perhaps the Eleventh Amendment second, which is, well, maybe you have an action but not against them, and then Younger would sort of seem to come third of, well, maybe we have a way. Principles of comity, yes. That hierarchy appears correct to me. Okay. Thank you. Thank you. We've given you a couple of minutes for rebuttal since we took a lot of time with questions. May I have 30 seconds to address this 2 a.m. realization that's been prompted by Judge Berzahn? I always seem to realize that I didn't frame the issue very well. You'll think of the best argument tomorrow at 2 a.m. No. That's going to be crazy. Just give me 30 seconds. I want to say this. I can supply you, if you would like, with examples of statutes in all these jurisdictions, other than Oregon, because it doesn't matter, Oregon, that define tax-exempt fuel. There's various examples. The one that really pops into my mind first is fuel put in the tank of a refrigerated trailer to run the refrigeration unit. There's others. But that's the kind of thing. Okay. So here's the deal. Yes, we can go to Nebraska and ask them for a refund of fuel that we put in our refrigeration trailer unit tank. But in order to make the argument that we're making, that is, that the fuel used while idling is not used for propulsion and is not taxable in the first instance, we have to do that in front of our base administrator. That's the only opportunity we have. Nebraska is not going to bring an action against us. How do you know that? How do you know that if you brought a suit for declaratory judgment in Nebraska that you couldn't frame a complaint that said, to the extent Nebraska has an interest in taxes collected by Oregon under this compact, those taxes that Nebraska is entitled to don't reach fuel we use while we're idling because that's not covered by your statute? How do you know you couldn't do that? Well, I don't know absolutely, but I can anticipate the response, which is if it says so. So this brings up another question. Under the Tax Injunction Act in general, don't you at least have to once try a remedy before you can say that it isn't plain speaking efficient? I mean, here we have a sort of discrete legal issue, whether or not the states are going to entertain this kind of a suit as being one for tax exempt. And you've never tried it. So how do we know it's not a plain speaking efficient remedy? Because, well, it's a matter of common sense. It's not a plain speaking efficient remedy for 47 states. But if I can also add to that. I don't know if you can just name that one, but. But I wanted to respond to this, and that also responds to the Bergeron, is that IFTA itself indicates that we have to deal with the base administrator. So if we file the case in Nebraska, the court is likely to move to dismiss because they're going to say this is not the appropriate date. I don't see how that helps you. Because if it's the job of Oregon, you have a remedy in Oregon, you're pursuing it. If it's the job of Nebraska, there is a remedy there that you haven't pursued. But I don't see how it helps you to say whether it's the administrating state's job, you go to the administrating state and there is a remedy because you're using it. We know that there is one. If it's the job of the other 47 states, then we look to see if you can file a claim there. Your Honor. But I don't see how it helps you to say that it's all in Oregon because that seems to even weaken your case because you're already pursuing a remedy in Oregon. Counsel and ODOT and the ALJ have already said that they won't address this claim, that we have to go to the other states. Okay. And you haven't tried. Am I wrong to, and this is just recollection on anything I've looked at for this case, but I believe that in order to claim that there's not a plain speeding efficient remedy for purposes of the tax injunction act, you would have to be able to point to something like it's been trumped and it didn't work. Can you just come in here and ask us to guess what Nebraska would do with this? Well, I think I'm saying, no, I'm not asking that. I'm saying that the IFTA Act itself says we have to go through Oregon. That's what I'm saying. But now you're also saying that Oregon says no. Right. That's what they say. I thought you were saying that if you go through Oregon and you win, that then you're worried that Nebraska and all these other states will just say, so what, and blow you away and they're not going to follow. Absolutely. Couldn't you go into court in those other states and get a ruling that? I mean, that's what you don't really know. You haven't. You haven't. You haven't. I don't. I understand why you would like us to entertain this. And so you don't have to be in 48 states. But if you're wrong in your theory of what's a plain speedy, you know, efficient remedy, if that theory doesn't work, if I'm wrong, if you're wrong just on the numbers, then it seems to me that probably you have to show that you can't go to court in each of these other states and get an effective ruling. I think you may be right. If I'm wrong, Your Honor. But I think plain speedy and efficient means something. And one other thing, on the 11th Amendment, even if the refund is out, we ask for declaratory relief at a future date. Thank you so much for your time. Thank you. Sorry about that. The case just argued is submitted, and we appreciate the very interesting arguments on both parts.
judges: Graber, Gould, Berzon